UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br>　　　　Plaintiff, </br></br>　　v. </br></br> TAREK MEHANNA, </br></br>　　　　Defendant. | No. 09-CR-10017-GAO |

## DECLARATION OF JOSHUA L. DRATEL

Joshua L. Dratel, pursuant to 28 U.S.C. § 1746, hereby affirms under the penalty of perjury:

1.  I am an attorney, and make this Declaration in connection with the proceedings in *United States v. Mehanna*, 09-CR-10017-GAO, and in particular with respect to certain classified information that forms the basis of Mr. Mehanna's *Giglio* claim (the "Kohlmann Information"). I make this Declaration based on my personal knowledge.

I.  **Professional Background**

2.  I am an attorney licensed to practice law in New York State, and admitted to practice in a number of United States federal District Courts, six Circuit Courts of Appeal, and the Supreme Court of the United States. I have been practicing criminal defense law continuously since my admission to the Bar in 1982, and my practice has always been concentrated in that field.

3.  I was President of the New York State Association of Criminal Defense Lawyers in 2005. I also served two terms on the Board of Directors of the National Association of Criminal Defense Lawyers (hereinafter "NACDL"), and served as its Parliamentarian in 2005-06.

Presently, I chair NACDL's National Security Committee and co-chair its Amicus Curiae Committee. Also, in 2006 I was awarded NACDL's Robert C. Heeney Award, which is that organization's highest honor. I serve as NACDL's delegate to the American Bar Association's Criminal Justice Section Council, and on the Advisory Board of *The Champion*, NACDL's monthly magazine.

4. In 2007, I received the Frederick Douglass Human Rights Award from the Southern Center for Human Rights for my work representing David Hicks, an Australian national detained by the U.S. at Guantanamo Bay, Cuba, from 2002-2007, and who was subject to a U.S. military commission prosecution. In 2011, I received the Honorable Robert Louis Cohen Award for Excellence in the Practice of Criminal Law from the New York Criminal Bar Association.

5. In addition to my law practice, I am currently a Senior Fellow for Legal Research at the Fordham School of Law's Center on National Security. I am co-editor with Karen J. Greenberg of *The Torture Papers: The Legal Road to Abu Ghraib* (Cambridge University Press: 2005), a compendium of government memoranda, and *The Enemy Combatant Papers: American Justice, the Courts, and the War on Terror* (Cambridge Press: 2008), a digest of the litigation documents in the five most important enemy combatant cases. I have also written published articles on a number of criminal justice topics, including some related to terrorism prosecutions. I am a 1978 Magna Cum Laude graduate of Columbia College, and a 1981 graduate of Harvard Law School.

6. In the course of my career, I have been involved as defense counsel, either at the trial or appellate level, and also as a consultant, in a significant number of other cases in various federal courts across the U.S., as well as in an expert and/or consulting capacity (on matters of U.S. federal criminal law) for cases in the United Kingdom and Canada. I have been qualified

twice as an expert in Canadian courts: once for purposes of testimony on U.S. national security law and once regarding New York State law and federal law related to search and seizure doctrine (under both the U.S. and New York State Constitutions).

## II. The Classified Materials.

7. In the course of my representation of Mostafa Kamel Mostafa in *United States v. Mostafa*, 04 Cr. 395 (KBF), which was tried in April 2014 in the Southern District of New York before The Honorable Katherine B. Forrest, I reviewed the Kohlmann Information.

8. I believe that the Kohlmann Information gives rise to a *Giglio* claim in Mehanna's case.

9. The government produced the Kohlmann Information in *Mostafa*. The Kohlmann Information includes a cover letter provided by the United States Attorney's Office for the Southern District of New York who tried the *Mostafa* case that I believe is relevant to Mehanna's *Giglio* claim. Later, in *United States v. Ahmad*, the government publicly said that this letter "summarized certain information falling within the purview of *United States v. Giglio*, 405 U.S. 150 (1972)." 04 Cr. 301 (JCH) (D. Conn.), Dkt. No. 199 at 2. Absent this letter, the disclosure would be materially incomplete.

10. I also represented the defendant, Babar Ahmad, in *Ahmad*, in the District of Connecticut. There, on or about July 7, 2014, the government produced the Kohlmann Information in the context of Mr. Ahmad's sentencing, which occurred July 16, 2014. In that case, after conceding that the material contained *Giglio* information, *see id.*, the government ultimately withdrew Mr. Kohlmann as an expert witness at sentencing and withdrew his expert report.

11. The government also produced the Kohlmann Information in or about February 2014 in *United States v. Abu Ghayth*, 98 Cr. 1023 (LAK), also in the Southern District of New

York.

12. Those three cases, all in 2014, represent the first time the Kohlmann Information had been disclosed to defense counsel in a criminal prosecution. As far as I am aware, the government would not be required to produce the Kohlmann Information under any rule or doctrine other than *Giglio*.

13. In 2015, the government disclosed the Kohlmann Information in another case in which I represent the defendant, *United States v. Hasbajrami*, 1:11-cr-00623-JG-1 (E.D.N.Y.).

14. In *Hasbajrami*, the defense filed a *Daubert* motion concerning the Kohlmann Information. *See Hasbajrami*, Dkt. No. 138 at 3 (referencing "SECRET submission").

15. It is my opinion that review of the Kohlmann Information is essential to any cross-examination of Mr. Kohlmann, who was a key witness in the *Mehanna* prosecution. It is also my opinion that the Kohlmann Information is extraordinarily material to such cross-examination; indeed, I do not believe there could be more material information. The Kohlmann Information unquestionably qualifies as material covered by *Giglio*. Because the Kohlmann Information is classified, I cannot make any further statement as to its content or substance.

16. I am not counsel to Mr. Mehanna on his motion under 28 U.S.C. § 2255. In my opinion, it is imperative that Mr. Mehanna's attorneys on that motion obtain security clearances at a level appropriate to permit them to review the Kohlmann Information.

17. Prior to receiving the Kohlmann Information, I had been involved in at least two other federal criminal cases in which Mr. Kohlmann testified at trial as an expert for the government. The Kohlmann Information was not disclosed in either of those cases. In Mr. Mehanna's case, I was involved, *inter alia*, in assisting pre-trial motions and preparing certain witnesses. On information and belief, the Kohlmann Information was not disclosed to Mr. Mehanna or his

attorneys. I am also directly aware of another federal criminal case in which Mr. Kohlmann testified as a government expert, but in which the Kohlmann Information was not disclosed.

18. Mr. Kohlmann testified for the government in more than two dozen other criminal prosecutions, and it is my understanding, based on specific information, that the Kohlmann Information was not disclosed to defense counsel in those cases. I do not believe—based on a combination of personal knowledge and experience—that such previous non-disclosure was based on any joint or even individual decision(s) by the Assistant United States Attorneys involved in those cases for the past dozen years. I have reason to believe that those attorneys were unaware of the Kohlmann Information at the relevant times.

19. In *Mostafa*, I filed an application pursuant to §5 of the Classified Information Procedures Act ("CIPA") to permit me to use the Kohlmann Information in my cross-examination of Mr. Kohlmann. This request resulted in litigation, which included a series of letters from me and from the government and multiple court conferences, concerning the materiality of the information and how it could be used during Mr. Kohlmann's cross-examination. This litigation was conducted pursuant to CIPA. While it remains classified, the proceedings were transcribed and, along with the Kohlmann Information itself, the transcripts and filings are housed in the Secure Compartmental Information Facility ("SCIF") in the Southern District of New York.

20. In connection with the *Mostafa* litigation, either co-counsel or I read all of Mr. Kohlmann's prior federal testimony (that was provided pursuant to 18 U.S.C. §3500). In my opinion, the Kohlmann Information demonstrates that there were instances in which Mr. Kohlmann's prior testimony was misleading and/or simply false. Representative instances of that false and/or misleading testimony were catalogued in written CIPA litigation in *Mostafa*, refer-

enced above.

21. CIPA litigation concerning the classified material was also conducted in *Abu Ghayth*. Relevant proceedings were transcribed and those transcripts and filings are a part of the *Mostafa* CIPA litigation, housed at the SCIF in the Southern District of New York.

22. It is my opinion that, in addition to the Kohlmann Information itself, Mr. Mehanna's habeas counsel should be allowed access to the CIPA litigation conducted in *Mostafa* concerning the use of the Kohlmann Information at trial (including the *Abu Ghayth* filings that are part of the *Mostafa* record). Working within the SCIF is extremely burdensome. Particularly where Mr. Mehanna's representation is *pro bono*, requiring his counsel to re-create already-completed work product and analysis within the confines of the SCIF would be unnecessary and unfair. The government has ready access to all cases in which this issue has been litigated and is not required to work within the confines of the SCIF. Without burden to the government, Mr. Mehanna's counsel might be granted access to the referenced litigation, all of which is part of the record in *Mostafa*, is already transcribed, and is located in the same location as the classified information. The Kohlmann Information and the CIPA litigation from *Mostafa* should be made available to Mehanna's counsel at a SCIF located in Boston.

23. I have read Mr. Kohlmann's testimony at Mr. Mehanna's trial. On direct examination, Mr. Kohlmann provided answers that were in direct conflict with the Kohlmann Information. Those answers were, in my opinion, false, and deliberately designed to mislead both the jury and the Court (if not the prosecutor as well).[1] It is my opinion that his cross-examination

---

[1] Based on my experience, both generally as a criminal defense attorney and specifically with respect to terrorism cases in federal court and the testimony of expert witnesses, I believe that if the prosecutor was aware of the Kohlmann Information, he either would not have asked the questions in the manner in which they were asked, or would have elicited the truth from Mr. Kohl-

was materially impaired by the government's failure to disclose the Kohlmann Information. This information was critical to the jury's assessment of Mr. Kohlmann's credibility, bias, and independence. The determination regarding whether the lack of disclosure requires a new trial cannot properly be made without both the Court's and the defense's review of such materials. A fair adjudication of Mr. Mehanna's claims, and the adversary process itself, demand as much.

24. I am available to the Court if it wishes further communication with respect to this declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 25, 2015.

Joshua L. Dratel, Esq.

---

mann. Certainly, a prosecutor aware of the Kohlmann information would have had an ethical and professional duty to correct Mr. Kohlmann's false testimony.